# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 03-6096EA

_____

In re:                                         *
Henry Earl Renaud and                          *
Opal Minnie Renaud                             *
                                               *
      Debtors.                                 *
                                               *
                                               *
M. Randy Rice, Trustee                         *
                                               *    Appeal from the United States
      Plaintiff - Appellee,                    *    Bankruptcy Court for the Eastern
                                               *    District of Arkansas
             v.                                *
                                               *
Simmons First Bank of Searcy,                  *
                                               *
      Defendant - Appellant.                   *

_____

Submitted: April 21, 2004
Filed: April 30, 2004

_____

Before SCHERMER, FEDERMAN, and VENTERS, Bankruptcy Judges.

_____

VENTERS, Bankruptcy Judge.

This is an appeal from two rulings of the bankruptcy court[1] holding that Simmons First Bank of Searcy ("Simmons Bank") holds unperfected liens on Henry and Opal Renaud's ("Debtors") 2001 Polaris ATV and mobile home. The issues on appeal are twofold: (1) whether a security interest in an ATV may be perfected under Arkansas' Uniform Commercial Code when that interest was not noted on the ATV's certificate of title, and (2) whether the Debtors' mobile home was transformed from personal to real property when the Debtors affixed it to their land, such that a security interest in the mobile home could be perfected by a real estate mortgage. For the reasons stated below, we affirm the rulings of the bankruptcy court.

## I. STANDARD OF REVIEW

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. Findings of fact are reviewed for clear error, and legal conclusions are reviewed *de novo*. *Blackwell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764, 765 (8th Cir. 2000); *Official Committee of Unsecured Creditors v. Farmland Industries, Inc.*, 296 B.R. 188, 192 (B.A.P. 8th Cir. 2003). Matters committed to the bankruptcy court's discretion will be reversed only if the court has abused its discretion. *C.T. Development Corp. v. Barnes (In re Oxford Development, Ltd.)*, 67 F.3d 683, 685 (8th Cir. 1995); *City of Sioux City, Iowa v. Midland Marina, Inc. (In re Midland Marina, Inc.)*, 259 B.R. 683, 686 (B.A.P. 8th Cir. 2001).

## II. BACKGROUND

In 2001, the Debtors borrowed money from Simmons Bank to purchase a Polaris ATV. That same year, Opal Renaud signed a consolidation note with Simmons Bank refinancing the ATV and a 1994 Ford truck. To secure its loan,

---

[1] The Honorable Audrey R. Evans, United States Bankruptcy Judge for the Eastern and Western Districts of Arkansas.

Simmons Bank noted its lien on the Ford truck's certificate of title, and had Opal execute a security agreement in favor of Simmons Bank that covered the ATV. Simmons Bank filed a UCC-1 financing statement with the Arkansas Secretary of State in an effort to perfect its interest in the ATV. It acknowledged that it never noted its interest on the ATV's certificate of title.

Also in 2001, the Debtors refinanced their purchase of a Spirit mobile home, along with the real property on which it is affixed, by borrowing $33,100.83 from Simmons Bank. The previous lienholder on the mobile home released its lien noted on the certificate of title for the mobile home, and Simmons Bank placed the clean title in the Debtors' loan file. At no time did Simmons Bank note its interest on the certificate of title; rather, Simmons Bank recorded a mortgage on the real property covering "all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate." The Debtors acknowledged their intent to mortgage both the real property and the mobile home to secure the debt.

## III. DISCUSSION

Simmons Bank argues that the bankruptcy court committed an error of law when it ruled that the only method of perfecting a security interest in an ATV and a mobile home was to have that interest noted on the property's certificate of title. Simmons Bank acknowledges that a creditor may perfect its interest using the certificate of title laws, but Simmons Bank also contends that it has the option to perfect an interest in the ATV under the Uniform Commercial Code. Furthermore, Simmons Bank argues that the Debtors' mobile home lost its identity as personal property when it became affixed to the Debtors' real property and that Simmons Bank's mortgage on the real property therefore encompassed the mobile home.

## A. The ATV

The bankruptcy court held that an ATV is a motor vehicle subject to Arkansas' certificate of title laws. Simmons Bank argues that Arkansas law does not require ATVs to be registered as motor vehicles for operation on the public highways; thus, a notation on the ATV's certificate of title is not the exclusive method to perfect a lien. Ark. Code Ann. § 27-21-103.[2]

The Bank confuses the certificate of title and perfection laws with the statutes regulating the operation of ATVs on the public highways. In fact, under Arkansas law, not all ATVs are required to be registered as a motor vehicle for operation on the public highways, but "all owners of [ATVs] that are not otherwise required to be registered by law shall register them with the Director of the Department of Finance and Administration within thirty (30) calendar days of acquiring them." § 27-20-202(a). The Director of the Department of Finance then issues "a certificate of title to the owner of [the ATV]." § 27-20-205. Accordingly, while an ATV does not have to be registered as a "motor vehicle, motorcycle, or motor driven cycle for operation on the public streets and highways," § 27-21-103, nothing in the statutes exempts ATVs from the certificate of title laws as stated by § 27-20-205. By not requiring ATVs to be registered as motor vehicles for operation on the public highways, the

---

[2]  That statute provides:
Nothing in this chapter shall be construed to require an all-terrain vehicle to be registered as a motor vehicle, motorcycle, or motor-driven cycle for operation on the public streets and highways.
Ark. Code Ann. § 27-21-103.
Chapter 21 of Title 27 of the Arkansas Code governs ATVs. The purpose of the Chapter is "to regulate the use of recreational all-terrain vehicles by restricting their use on the public streets and highways .... to ensure the safety and general welfare of the citizens ... by limiting the situations where all-terrain vehicles are permitted to be used in a dangerous and unsafe fashion." § 27-21-101.

4

statute exempts ATVs from, *inter alia*, certain equipment requirements. *See e.g.*, § 27-20-104 (requiring motorcycles to have working horns, taillights, etc.).

Under Arkansas law, an ATV is subject to the certificate of title laws because all owners are required to register an ATV with the Department of Finance and Administration, which then issues a certificate of title. Because ATVs are covered by certificate of title laws, the provisions of the Uniform Commercial Code do not apply. See § 4-9-311(a)(2) (stating that "the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to: ... (2) any other laws of this state which provide for central filing of security interests or which require indication on a certificate of title to property of such interest...."). *See also Union Planters Bank, N.A. v. Burns (In re Gaylord Grain L.L.C.)*, 306 B.R. 624 (holding that "the filing provisions of the Missouri Uniform Commercial Code have no application to motor vehicles and perfection of liens therein" and sanctioning the appellant bank for filing a frivolous appeal). Therefore, the bankruptcy court did not commit any error of law in concluding that Simmons Bank was an unperfected creditor in the Debtors' ATV and that the Chapter 7 Trustee was able to avoid Simmons Bank's lien pursuant to 11 U.S.C. § 544.

**B. The Mobile Home**

With respect to the mobile home, Simmons Bank argues that the bankruptcy court erred inasmuch as it held that the only way to perfect a security interest in a mobile home is to note that interest on the certificate of title. Simmons Bank contends that its mortgage on the real property encompassed the mobile home as soon as the mobile home became permanently affixed to the real property.

The particular issue addressed by Simmons Bank is not new. Courts and legislatures have struggled with the problems of classifying mobile homes that – in their final stages – are every bit as much of the real property as a traditional brick and

mortar construction. The particular problem in this case, however, is not necessarily a definition of when an item of personal property becomes annexed to the realty, but rather one of perfecting a security interest in a mobile home and how to maintain that perfection in light of the changing nature of the property from personal to real.[3]

There is no dispute that the Debtors' mobile home is subject to registration under Arkansas certificate of title laws. Ark. Code Ann. § 27-14-703 ("Every motor vehicle ... and every mobile home shall be subject to the provisions of this chapter ...."). The fact that a mobile home is without wheels and designed as permanent living quarters does not exempt owners of mobile homes from having to obtain a certificate of title. See § 27-14-207(2) (defining a "mobile home" as "every house trailer or other vehicle, with or without wheels, designed for use as living quarters, either permanent or temporary, and, *at the time of manufacture*, capable of being towed or otherwise transported or drawn upon a highway.") (emphasis added). In an apparent attempt to avoid the conundrum of when a mobile home is transmogrified into a fixture or structure affixed to the realty, the Arkansas legislature has established a bright-line rule – the time of manufacture – to determine whether a mobile home is a mobile home or something else. Thus, it would appear that a house trailer or other vehicle designed for use as living quarters and capable of being towed or otherwise transported or drawn on a highway *at the time of manufacture* will always be a mobile home subject to the certificate of title laws.

We can find no exception in Arkansas's certificate of title laws that exempt mobile homes if they are affixed to realty, and counsel for Simmons Bank has pointed

---

[3] The bankruptcy court found it unnecessary to decide the factual issue of whether the Debtors' mobile home had become a fixture that would be covered by a real estate mortgage. However, for purposes of its analysis in resolving the legal question before it, the court assumed that the mobile home in this case was permanently affixed to the real property and was thus ostensibly covered as a fixture under Simmons Bank's mortgage.

6

to no such exception. *Cf.* Ala. Code Ann. § 32-8-30(c) (providing a method for cancelling the certificate of title on a mobile home when it is affixed to the realty upon a showing that, *inter alia*, the secured party on the certificate of title has released its lien). We should not provide an extra-statutory exception to Arkansas law when the Arkansas legislature specifically made notation on the certificate of title on a mobile home the exclusive method of perfecting an interest therein. Ark. Code Ann. § 27-14-807(a) ("The methods provided in this subchapter of giving constructive notice of a lien or encumbrance upon a registered vehicle shall be exclusive except as to liens dependent upon possession."). If Simmons Bank is unhappy with the conclusion reached by the bankruptcy court, it should petition the Arkansas legislature to change the certificate of title laws pertaining to mobile homes affixed to realty.

Accordingly, we affirm the rulings of the bankruptcy court.

_____